IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEROLD WAYNE OSTENAA,

    Plaintiff,                       No. CIV S-09-0716 DAD

    vs.

MICHAEL J. ASTRUE,                   <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
                                 /

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

        On February 8, 2006, plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), alleging disability beginning on November 15, 1998 due to bipolar, back, right wrist, lower extremity weakness, high blood pressure, and heart problems. (Transcript (Tr.) at 106-10, 125-36.) The application was denied initially on March 27, 2006, and upon reconsideration on February 2, 2007. (Tr. at 77-89.) A

1

hearing held before an Administrative Law Judge (ALJ) on February 13, 2008, was continued to April 10, 2008, to allow the ALJ to review extensive new medical records produced by plaintiff's administrative counsel. (Tr. at 27-34.) Plaintiff testified at the April 10, 2008 hearing, as did plaintiff's sister and a vocational expert. (Tr. at 35-76.) In a decision issued on August 28, 2008, the ALJ found that plaintiff was not disabled at any time from the alleged date of onset through December 31, 2002, plaintiff's date last insured. (Tr. at 14-26.) The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2002 (Exhibit 3D/1). Thus, he must establish disability prior to or on that date.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 15, 1998 through his date last insured of December 31, 2002 (20 CFR 404.1520(b) and 404.1571 *et seq*) (Exhibit 3D/2).
>
> 3. Through December 31, 2002, the date last insured, the claimant had the following severe impairment: Degenerative disc disease of the lumbar spine, residuals of 1998 cerebrovascular accident, bipolar disorder, and obesity (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He should never climb ladders, ropes, or scaffolds. He can occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl. He is able to frequently balance, and he must avoid concentrated exposure to vibrations and moderate exposure to hazards. Mentally, he is able to do simple repetitive tasks with decreased public interaction.
>
> 6. Through the date last insured, the claimant's past relevant work as an Extruder Machine Operator did not require the performance of work-related activities precluded by the claimant's residual functional capacity at that time (20 CFR 404.1565).
>
> 7. The claimant was not under a disability as defined in the Social Security Act, at any time from November 15, 1998, the alleged

/////

2

    onset date, through December 31, 2002, the date last insured (20 CFR 404.1520(f)).

    8. The claimant's distant history of alcohol and other drug abuse is not material to this decision. The objective evidence (exhibit 2F) and his testimony support this finding.

(Tr. at 16-26.)

    On January 16, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 1-10.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 16, 2009.

## LEGAL STANDARD

    The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

    A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Yuckert</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff argues that the ALJ committed five principal errors in finding plaintiff not disabled: (1) the ALJ failed to utilize the services of a medical advisor to establish the onset of plaintiff's disability; (2) the ALJ failed to properly characterize some of the medical evidence and failed to credit the only mental residual functional capacity (RFC) assessment in the record

regarding plaintiff's mental functional limitations prior to his date last insured; (3) the ALJ applied the wrong legal standard in evaluating plaintiff's obesity; (4) the ALJ failed to properly credit the testimony of plaintiff and his sister regarding the onset and extent of plaintiff's mental limitations without legitimate reasons for so doing; and (5) the ALJ failed to properly question the vocational expert (VE) and failed to properly credit the testimony of the VE in response to a hypothetical question that accurately reflected plaintiff's functional limitations. Each of plaintiff's arguments are addressed below.

**I. Services of a Medical Advisor**

While it is the claimant's burden to prove that he or she is disabled, it is well established that the ALJ has a duty throughout the proceedings "to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). See 20 C.F.R. §§ 404.1512(e). Rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ has an independent duty to fully develop the record, especially where the claimant is not represented. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). See also De Lorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (the ALJ's duty to develop the record is present even if claimant is represented by counsel); Brown, 713 F.2d at 443 (where the ALJ feels that more evidence, or more reliable evidence, is necessary, the ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel). However, the ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

Here, plaintiff argues that the ALJ was required by Social Security Ruling 83-20 and Ninth Circuit authority to employ the services of a medical advisor to establish the onset date of plaintiff's disability. Plaintiff's argument misses the mark. While an ALJ has a duty to develop the record, it was plaintiff's burden to prove that he was disabled prior to December 31, 2002, his last date insured. The ALJ found that plaintiff had severe impairments through

1  December 31, 2002, but determined that plaintiff retained the residual functional capacity to
2  perform light work throughout the relevant period of time.  (Tr. at 17-19, 22-24.)  An ALJ is not
3  required to obtain medical expert testimony for the purpose of determining the onset date of
4  disability unless the claimant is found to be disabled.  Sam v. Astrue, 550 F.3d 808, 809 (9th Cir.
5  2008) (holding that "SSR 83-20 does not require a medical expert where the ALJ explicitly finds
6  that the claimant has never been disabled").  Accordingly, the court finds that plaintiff is not
7  entitled to summary judgment in his favor with respect to his claim that the ALJ failed to utilize
8  the services of a medical advisor.

**II. Characterization and Crediting of Medical Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a

nonexamining physician." Lester, 81 F.3d at 830.  An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id. at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original).

In support of his argument that the ALJ failed to properly characterize certain medical evidence and failed to credit the only RFC assessment in the record addressing plaintiff's mental functional limitations prior to his date last insured, plaintiff cites the ALJ's treatment of (1) statements made by Ronald E. Allen, Ph.D., a VA clinical psychologist, in a September 2002 intake assessment; (2) limitations assessed and a conclusion reached by Elizabeth A. Harrison, M.D., a state agency psychiatrist, in a January 2007 mental RFC assessment of plaintiff as of his date last insured; and (3) the opinions of Shannon Suo, M.D., a psychiatrist who began treating plaintiff in January 2006.

After the initial denial of his disability application in March 2006, plaintiff requested reconsideration on the ground that medical records which were not reviewed, including "VA files from Mather, files from Northgate & UC Davis," show that he is mentally and physically disabled.[1]  (Tr. at 85.)  The agency's reconsideration included an assessment of plaintiff's mental RFC by Dr. Harrison, who completed a Mental Residual Functional Capacity Assessment form in January 2007.  (Tr. at 359-61.)  After reviewing the medical records

/////

/////

---

[1] The initial denial decision indicates that records were requested twice from Sacramento County Northeast Health Center and the VA in Sacramento, but no responses had been received as of March 27, 2006.  (Tr. at 79.)  Records were not ordered from Northgate Point on the ground that plaintiff was first seen there in October 2005.  (Tr. at 138.)

provided to the agency,[2] Dr. Harrison checked boxes on the form to indicate that plaintiff, as of his date last insured, suffered from an affective disorder, was not significantly limited in thirteen categories of mental capacity, was moderately limited in seven categories, and was not markedly limited in any category. (Tr. at 359-60). Under the heading "Understanding and Memory," Dr. Harrison checked a box indicating moderate limitations in plaintiff's ability to understand and remember detailed instructions. (Tr. at 359.) Under the heading "Sustained Concentration and Persistence," Dr. Harrison checked boxes indicating moderate limitations in plaintiff's ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or proximity to others without being distracted by them; and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 359-60.) Under the heading "Social Interaction," Dr. Harrison checked boxes indicating moderate limitations in plaintiff's ability to (1) interact appropriately with the general public and (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 360.) Dr. Harrison did not assess plaintiff as significantly limited in any category under the heading of "Adaptation." In the final section of the form, Dr. Harrison elaborated on her summary conclusions by explaining that plaintiff's "mood variability and dec[reased] memory prevents more than simple SGA [substantial gainful activity] [with] dec[reased] public" contact. (Tr. at 361.) However, on January 30, 2007, the same date she completed the mental RFC assessment form, Dr. Harrison approved a determination affirming the initial denial of plaintiff's disability application. (Tr. at 78.)

At the administrative hearing, plaintiff's counsel asked the VE to add to the hypothetical question posed by the ALJ all of the limitations identified by Dr. Harrison in her mental RFC assessment. (Tr. at 74.) The VE testified that if the hypothetical individual needed

---

[2] Records received from UC/Davis/UCD Medical Center in November 2006 were considered by the ALJ along with the records previously considered. (Tr. at 86.)

8

breaks in addition to a 15-minute morning break, a half-hour to hour lunch break, and a 15-minute afternoon break, the individual would not be able to do plaintiff's past relevant work or any other jobs. (Tr. at 75.)  In his written decision, the ALJ discussed the VE's testimony as follows:

> Claimant's counsel asked the VE to add mental restrictions to the original hypothetical. . . .
>
> The VE testified that such an individual could not perform any of the claimant's past relevant work or any other jobs.
>
> The undersigned notes that in adding to the original hypothetical, the VE looked to the opinion of Dr. Harrison who determined that the claimant had moderate mental limitations prior to his last date insured (Exhibit 4F [tr. at 359-61].)
>
> In reviewing the claimant's medical record prior to his date last insured, the undersigned is not persuaded that the claimant had moderate limitations in every area of mental functioning. Significantly, in September of 2002, Robert E. Allen, Ph.D., noted that he was not psychiatrically disabled, to the point that he suggested the claimant might want to contact the Department of Vocational Rehabilitation about returning to the world of work (Exhibit 2F/56 [tr. at 238]).
>
> Nevertheless, in spite of finding the claimant moderately limited, Dr. Harrison also determined that the claimant could still perform simple repetitive work (Exhibit 4F [tr. at 359-61]).

(Tr. at 25.)

Plaintiff argues that (1) the ALJ's characterization of Dr. Allen's statements was incomplete and misleading; (2) Dr. Harrison did not find plaintiff capable of performing simple repetitive work but, even if it was her opinion that plaintiff could perform simple repetitive work, the VE testified that the moderate limitations assessed by Dr. Harrison precluded competitive, full-time employment; and (3) the opinions in Dr. Harrison's mental RFC assessment were corroborated by the opinions of plaintiff's treating psychiatrist after 2006 and by the testimony of plaintiff's sister in 2008.  Plaintiff urges the court to remand the case for payment of benefits due to the ALJ's failure to provide legitimate reasons for rejecting Dr. Harrison's mental RFC and failure to provide specific and legitimate reasons for rejecting the opinions of treating psychiatrist

9

Dr. Suo.

Dr. Allen's intake assessment of plaintiff in the VA Mental Health Clinic on September 18, 2002, may have been brief, but the assessment is quite detailed and reflects that Dr. Allen had access to and had reviewed the records of plaintiff's medical treatment. In taking plaintiff's history, Dr. Allen noted variable mood, variable sleep, variable appetite, some guilt, occasional suicidal ideation without intent, and slightly decreased memory. (Tr. at 235.) Under the heading "Medical Issues," Dr. Allen recorded a list of nine active medical issues from a computerized problem list in plaintiff's VA medical file: hyperlipidemia, hypertension, esophageal reflux, cerebral/vascular cognitive defect, inflammatory/toxic neuropathy, cerebrovascular accident (CVA), peripheral neuropathy, obstructive jaundice, and common bile duct calculi. (Id.) Dr. Allen's mental status examination revealed a mildly restricted affect, a euthymic mood, no psychosis, cognitive functions grossly intact, and good insight and judgment. (Tr. at 236.) Dr. Allen diagnosed probable adjustment reaction secondary to an occupational problem. (Id.) He assessed mildly impaired functional status, significant medical and psychiatric co-morbidity, minimal potential for dangerous behavior, a low-stress and highly-supportive home environment, and optimal attitude and engagement. (Tr. at 237-38.) Dr. Allen indicated that he gave plaintiff the address and phone number of the California Department of Vocational Rehabilitation "to evaluate his potential to return to the world of work" and advised plaintiff to "see the VA social worker about possible entitlements for GA or SSI on the basis of his medical problems." (Tr. at 238.) Dr. Allen concluded that plaintiff "is not disabled psychiatrically." (Id.)

Plaintiff asserts that the ALJ's characterization of Dr. Allen's statements is incomplete and misleading because Dr. Allen's statements were "very different" from the ALJ's characterization of them and Dr. Allen "did not feel [plaintiff] was disabled based only on a psychiatric impairment, but was possibly disabled based on all his medical problems." (Pl.'s Mot. for Summ. J. at 19.) In context, as set out above, the ALJ's comments about Dr. Allen's

1  statements followed his own observation that he was "not persuaded that the claimant had
2  moderate limitations in every area of mental functioning." (Tr. at 25.) The ALJ observed
3  accurately that, "[s]ignificantly, in September of 2002, Robert E. Allen, Ph.D., noted that [the
4  claimant] was not psychiatrically disabled." (Id.) The ALJ emphasized the point by adding that
5  Dr. Allen had even "suggested the claimant might want to contact the Department of Vocational
6  Rehabilitation about returning to the world of work." (Id.) The latter statement is only
7  incomplete in the sense that the ALJ did not quote Dr. Allen's exact words about referring
8  plaintiff for evaluation of "his potential to return to the world of work" and in that the ALJ did
9  not mention Dr. Allen's advice to contact a social worker about possible entitlement to General
10 Assistance or SSI benefits on the basis of medical problems. However, the statement is not
11 misleading because the ALJ had already mentioned Dr. Allen's referral to the California
12 Department of Vocational Rehabilitation "about the possibility of working again" (tr. at 23) and
13 the referral to a social worker regarding GA or SSI based on medical problems was not relevant
14 to plaintiff's mental RFC. In sum, the court does not find the ALJ's characterization of Dr.
15 Allen's statements to be inaccurate or misleading.

16       Plaintiff's arguments regarding the ALJ's characterization of Dr. Harrison's
17 opinions are also unpersuasive. Dr. Harrison assessed plaintiff as moderately limited in seven of
18 twenty categories, but not markedly limited in any category, and opined that plaintiff's mood
19 variability and decreased memory "prevents more than simple SGA" with decreased public
20 contact. (Tr. at 361.) Plaintiff's reading of Dr. Harrison's opinion is inconsistent with the
21 wording of the statement and is contradicted by Dr. Harrison's reconsideration determination
22 affirming the agency's initial denial of plaintiff's application for disability. (Tr. at 78 & 361.)

23       Plaintiff argues next that, regardless of whether Dr. Harrison believed plaintiff
24 capable of substantial gainful activity, the VE testified that the moderate limitations assessed by
25 Dr. Harrison precluded competitive, full-time employment. In fact, the hearing transcript
26 establishes that the VE focused solely on the hypothetical person's moderately limited ability to

perform at a consistent pace without an unreasonable number and length of rest breaks.  (Tr. at 74-75.)  Dr. Harrison checked boxes indicating moderate limitations in four of eight categories involving concentration and persistence, including the ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Tr. at 359-60.)  In Dr. Harrison's explanation of her summary conclusions, she cited only plaintiff's mood variability and decreased memory as preventing him from doing more than simple work with decreased public contact.  Dr. Harrison did not cite any need for an unreasonable number and length of rest periods.  Moreover, Dr. Harrison did not treat or examine plaintiff, and nothing in her RFC assessment or in the medical record supports a conclusion that she believed plaintiff would require an unreasonable number and length of rest periods.  The VE's testimony based on his interpretation of the hypothetical question asked by plaintiff's administrative counsel was properly rejected by the ALJ because plaintiff's RFC did not include a requirement for longer breaks or more frequent breaks.  (Tr. at 25.)

        On this record, the ALJ did not fail to credit Dr. Harrison's mental RFC assessment.  The ALJ's decision includes a list of all limitations assessed by Dr. Harrison as well as her conclusion.  (Tr. at 21.)  The ALJ plainly relied on Dr. Harrison's mental RFC assessment when he determined that plaintiff's RFC must include a limitation to simple repetitive tasks with decreased public interaction.  (Tr. at 22.)  The Ninth Circuit has joined the Sixth and Eighth Circuits in holding that an RFC limitation to simple tasks may compensate adequately for moderate mental limitations, even when the claimant has many such limitations.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) ("The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him – Dr. Eather's recommended restriction to 'simple tasks.'"); Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) (where ALJ's hypothetical question incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and

stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (where state agency psychologist identified claimant as having limitations in concentration, persistence, or pace and found claimant able to perform at least simple, repetitive, and routine activity, the ALJ's hypothetical question including ability to perform simple, routine, repetitive tasks adequately captured claimant's deficiencies in concentration, persistence, or pace).  The court finds that the ALJ's determination that plaintiff's RFC limits him to simple tasks compensates adequately for the moderate mental limitations assessed by Dr. Harrison.

Having found that the ALJ did not fail to credit Dr. Harrison's mental RFC assessment, the court finds it unnecessary to address plaintiff's argument that the opinions in Dr. Harrison's mental RFC assessment were corroborated by the opinions of plaintiff's treating psychiatrist after 2006 and by the testimony of plaintiff's sister in 2008, or plaintiff's argument that the ALJ improperly rejected the diagnostic opinions of Dr. Suo.  Plaintiff has not demonstrated that the ALJ failed to properly characterize the medical evidence and failed to credit the only mental RFC assessment in the record regarding plaintiff's functional limitations prior to his date last insured.  Plaintiff is not entitled to summary judgment in his favor with respect to this argument.

### III. Legal Standard for Evaluating Obesity

Plaintiff argues next that the ALJ utilized the wrong legal standard to evaluate the impact of plaintiff's obesity.  Plaintiff concedes, however, that the ALJ evaluated plaintiff's obesity pursuant to SSR 02-1p, which is the applicable ruling, and that the ALJ properly noted that obesity contributes to and exacerbates many impairments and may cause or contribute to mental impairments such as depression.  Plaintiff also concedes that the ALJ specifically determined that the record shows that plaintiff's obesity could exacerbate such complications as peripheral vascular disease or hypertensive cardiovascular disease.  It appears that plaintiff complains of the following portion of the ALJ's determination that plaintiff's severe impairments

consisted of degenerative disc disease of the lumbar spine, residuals of a 1998 cerebrovascular accident, bipolar disorder, and obesity:

> In this case, the record shows that the claimant's obesity could exacerbate such complications as peripheral vascular disease, or hypertensive cardiovascular disease. However, the medical record shows that the claimant's physical deconditioning that rendered him obese and with alleged symptoms of pain and limited movement could have been readily remedied by daily physical exercise and a change in his level of consumption of food. In short, his symptoms could have been alleviated if he had changed his sedentary lifestyle.
>
> The undersigned finds that the claimant's obesity in combination with his other impairments did not increase the severity or functional limitations of those impairments prior to or on his date last insured.

(Tr. at 19-20 [citation omitted].)

SSR 02-1p directs adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, such as the assessment of an individual's RFC. The Ruling explains how obesity may increase the severity of related impairments, particularly musculoskeletal and respiratory impairments, and explains how the effects of obesity should be evaluated. An ALJ must evaluate the additional impact of a claimant's obesity both singly and in combination with the claimant's other impairments.

Here, the ALJ discussed SSR 02-1p at length at step two of the sequential evaluation process and determined that plaintiff's "obesity in combination with his other impairments did not increase the severity or functional limitations of those impairments prior to or on his date last insured." (Tr. at 19-20.) At step four of the sequential evaluation process, the ALJ determined that plaintiff's RFC was limited to light work, with no climbing of ladders, ropes, or scaffolds, and only occasional climbing of stairs and ramps, stooping, kneeling, crouching, and crawling. These limitations appear to accommodate plaintiff's degenerative disc disease of the lumbar spine, the residuals of his cerebrovascular accident, and his obesity.

Plaintiff cites no evidence in the record that the severity of these impairments was increased by his obesity such that additional limitations were required. Nor does plaintiff point to any evidence in the record establishing that his obesity caused any limitations which were not considered by the ALJ or that his obesity caused any limitations greater than those that were considered by the ALJ.

Plaintiff's conclusory argument concerning the alleged application of the wrong legal standard to evaluate the impact of his obesity is unpersuasive. The court finds no error in the ALJ's application of SSR 02-1p to the facts of this case. Accordingly, plaintiff is not entitled to summary judgment with respect to this argument.

**IV.  Plaintiff's Testimony and Third-Party Testimony**

Once a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged, the ALJ may not discredit the claimant's own testimony as to the severity of his symptoms merely because the degree of severity is unsupported by objective medical evidence. Lingenfelter v. Astrue, 504 F.3d 1023, 1035-36 (9th Cir. 2007); Reddick, 157 F.3d at 722; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281). See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller, 770 F.2d at 848).

In evaluating a claimant's subjective testimony regarding pain and the severity of symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence along with many other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285. The ALJ may also rely in part on his own observations of the claimant. Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute such observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d

172, 177 n.6 (9th Cir. 1990).

With respect to daily activities, it is well established that claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e). Daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). In order to conclude that the claimant's activities warrant an adverse credibility determination, however, the ALJ must make specific findings relating to the claimant's daily activities and the transferability of those activities to the work setting. Id.

The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919. The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Nor

1  does the fact that medical records do not corroborate the testimony provide a proper basis for
2  rejecting such testimony.  Smolen, 80 F.3d at 1289.  It is especially important for the ALJ to
3  consider lay witness testimony from third parties where a claimant alleges symptoms not
4  supported by medical evidence in the file and the third parties have knowledge of the claimant's
5  daily activities.  20 C.F.R. § 404.1513(e)(2); SSR 88-13.

6        Questions of credibility and the resolution of conflicts in the testimony are usually
7  deemed functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  The determination of
8  credibility is said to be a function of the ALJ acting on behalf of the Commissioner.  Saelee, 94
9  F.3d at 522.  As a general rule, an ALJ's assessment of credibility should be given great weight.
10  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary techniques of credibility
11  evaluation may be employed, and the adjudicator may take into account prior inconsistent
12  statements or a lack of candor by the witness.  Fair, 885 F.2d at 604 n.5.  Absent affirmative
13  evidence of malingering, however, the ALJ's reasons for rejecting the claimant's testimony must
14  be clear and convincing.  Morgan, 169 F.3d at 599.

15        Here, the ALJ found that plaintiff's medically determinable impairments could
16  reasonably be expected to produce the symptoms alleged by plaintiff, but discounted plaintiff's
17  statements concerning the intensity, persistence and limiting effects of his symptoms "to the
18  extent they are inconsistent with the residual functional capacity assessment." (Tr. at 23.)  The
19  ALJ cited (1) inconsistency between plaintiff's alleged symptoms and his ability to perform odd
20  jobs for neighbors, remodel his sister's house, walk three miles a day, and till the yard; (2)
21  inconsistency between the alleged symptoms and Dr. Allen's determination that plaintiff was not
22  disabled psychiatrically; and (3) inconsistency between the alleged symptoms and Dr. Harrison's
23  determination that plaintiff was not disabled prior to his date last insured.  (Tr. at 23.)  The ALJ
24  found plaintiff's sister to be a credible witness but also found that her observations were not
25  supported by objective medical evidence that would justify a finding of disability prior to
26  plaintiff's date last insured.

As discussed above, the medical evidence of record concerning plaintiff's impairments prior to December 31, 2002 does not support a finding of mental disability. The ALJ was permitted to consider the absence of supporting objective medical evidence along with other factors. The court finds that the ALJ offered clear and convincing reasons for discounting plaintiff's statements concerning the intensity, persistence and limiting effects of his psychiatric symptoms to the extent the statements were inconsistent with an RFC that limited him to light work consisting of simple, repetitive tasks with decreased public interaction. For the same reasons, the court finds that the ALJ properly considered the sister's credible testimony and found it insufficient, by itself, to establish that plaintiff was disabled by a mental impairment prior to his date last insured. Accordingly, plaintiff is not entitled to summary judgment in his favor with respect to his claim that the ALJ rejected his testimony and the testimony of his sister without articulating legitimate reasons for doing so.

### V. **Hypothetical Questions and VE's Responses**

Plaintiff's final argument is that the ALJ failed to properly question the VE and then failed to credit the VE's testimony in response to the expanded hypothetical question posed by plaintiff's administrative counsel at the hearing. The court has already considered plaintiff's argument regarding the VE's testimony and found that the VE's response to counsel's question was grounded on the VE's understanding that the hypothetical person would require an unreasonable number and length of rest breaks. In the absence of medical evidence that plaintiff required such breaks, or that Dr. Harrison believed that plaintiff required such breaks, the VE's testimony was based on an erroneous interpretation of that hypothetical question asked by plaintiff's administrative counsel. Therefore, that testimony was properly rejected by the ALJ because plaintiff's RFC did not include a requirement for longer breaks or more frequent breaks. Accordingly, plaintiff is not entitled to summary judgment in his favor with respect to this argument.

/////

**CONCLUSION**

For the reasons set forth above, the court has determined that plaintiff is not entitled to summary judgment in his favor with respect to any of his arguments.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 25) is denied;
2. Defendant's cross-motion for summary judgment (Doc. No. 26) is granted; and
3. The Commissioner's decision is affirmed.

DATED: December 27, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/ostenaa0716.order